STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OTTAWA

ZEELAND COMMUNITY HOSPITAL, a Michigan non-profit corporation,

    Plaintiff,

v

ASSURITY LIFE INSURANCE COMPANY, a Nebraska corporation, and GROUP MARKETING SERVICES, INC., a Michigan corporation,

    Defendants.

CASE NO. 06- 56415 -CK

HON. Edward R. Post

William W. Jack, Jr. (P23403)
R. Jay Hardin (P35458)
Joseph E. Belsito (P69014)
SMITH HAUGHEY RICE & ROEGGE
*Attorneys for Plaintiff*
250 Monroe Avenue, N.W.
200 Calder Plaza Building
Grand Rapids, MI 49503-2251
(616) 774-8000

## COMPLAINT & JURY DEMAND

There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the Complaint.

NOW COMES plaintiff, Zeeland Community Hospital, by and through its attorneys, Smith Haughey Rice & Roegge, P.C., and for its Complaint against defendants, states as follows:

### PARTIES/JURISDICTION

1. Plaintiff, Zeeland Community Hospital ("ZCH"), is a Michigan non-profit corporation with its principal place of business in Zeeland, Michigan, Ottawa County.

OCT 0 3 2006

2. Defendant, Assurity Life Insurance Company ("Assurity Life"), is a Nebraska corporation doing business in Ottawa County, Michigan and selling insurance policies to Michigan residents through third-parties.

3. Defendant, Group Marketing Services, Inc. ("GMS"), is a Michigan corporation doing business in Ottawa County, Michigan as a third-party administrator for defendant Assurity Life.

4. Venue is proper in Ottawa County pursuant to, and in accordance with, MCL § 600.1621.

5. The amount in controversy exceeds $25,000.00.

## GENERAL ALLEGATIONS

6. On or about February 6, 2001, Mr. Morales's physicians diagnosed him with Focal Motor Neuropathy with Conjunctive Block. The treatment of choice for this condition involves administering an immunizing agent, known as Immune Globulin, intravenously ("IGIV").

7. Morales received his first IGIV treatment on or about March 19, 2001. *See* **Exhibit A**, attached hereto. The charges for the treatment totaled $24,504.92. *Id.* Following adjustments by plaintiff's PPO (Preferred Provider Organization of Michigan, L.P.), Assurity Life – through its agent/third-party administrator, GMS – paid this claim on or about August 29, 2001. *Id.*

8. Morales received subsequent IGIV treatments as follows:

   a. April 30, 2001 ($13,699.89), paid by Assurity Life – through its agent/third-party administrator, GMS – on or about August 27, 2001;

   b. June 4, 2001 ($4,494.03), paid by Assurity Life – through its agent/third-party administrator, GMS – on or about August 31, 2001;

   c. July 2, 2001 ($4,494.03), paid by Assurity Life – through its agent/third-party administrator, GMS – on or about August 31, 2001; and

   d. July 23, 2001 ($9,579.03), paid by Assurity Life – through its agent/third-party administrator, GMS – on or about September 28, 2001.

*Id.*

9. However, Assurity Life – through its agent/third-party administrator, GMS – retroactively denied coverage for the treatments, contending that the claims were covered by Workers' Compensation; plaintiff refunded the payments made by Assurity Life on or about October 31, 2001 for the March 19, April 30, June 4, July 2, and July 23 treatments. *See id.*

10. Morales's Workers' Compensation carrier (Citizens Insurance) retroactively paid for Morales's prior IGIV treatments through July 23, and for his subsequent IGIV treatments on or about July 23, 2001 ($9,579.03), August 20, 2001 ($8,627.13), September 24, 2001 ($8,670.03), and October 24, 2001 ($5,907.31), which claims Citizens Insurance paid on or about November 29, 2001, February 21, 2002, and December 20, 2001, respectively. *Id.*

11. Citizens Insurance, though, also retroactively denied coverage for the treatments, citing the absence of a compensable injury and contending that Assurity Life should pay for the claims; plaintiff refunded the payments made by Citizens Insurance on or about December 10, 2003. *Id.*

12. Since November 26, 2001, Morales has sought, and plaintiff has provided services for, multiple IGIV treatments with each totaling, or in excess of, $4,302.21. *See id.*

13. To date, and since November 26, 2001, plaintiff has not received any payment for the IGIV services rendered.

14. Additionally, and as part of its diagnostic evaluation on February 6, 2001, plaintiff performed nerve tests and an EMG, which charges totaled $299.35. *Id.* Assurity Life – through its agent/third-party administrator, GMS – paid this claim on or about August 27, 2001, but retroactively denied coverage and was refunded by plaintiff on or about October 31, 2001. *Id.* Citizens Insurance denied any work-related injury or coverage for this charge.

15. On July 26, 2003, Patricia Boyd, plaintiff's Accounts Receivable Clerk, spoke with a GMS representative named Julia regarding the claims. *See* **Exhibit B**, attached hereto; *see also* Affidavit of

3

Patricia Boyd, attached hereto as **Exhibit C**, at ¶ 3. Julia informed Ms. Boyd that GMS was waiting for confirmation from Citizens Insurance that they (Citizens Insurance) owed no obligation to pay the claims; Julia indicated that if Citizens Insurance in fact owed no duty to pay for the claims, that GMS (via Assurity) would pay the claims. *See* **Exhibit B; Exhibit C** at ¶¶ 4-5.

16. On August 6, 2003, Ms. Boyd again spoke with Julia of GMS regarding the claims. *See* **Exhibit B; Exhibit C** at ¶ 6. Julia advised that their lawyers were reviewing the issue and would make a determination regarding whether GMS would pay the claims. *See id.* Parenthetically, Ms. Boyd also spoke with a Maureen from Citizens Insurance, who indicated that Citizens Insurance erroneously paid the claims due to an ex-employee's oversight, which employee "walked out" and closed all her accounts before she left. *See id.*

17. Maureen also indicated that Citizens Insurance had a letter from the doctor indicating that Morales's condition was not work-related. *See id.*

18. Ms. Boyd spoke with Julia again on September 19, 2003. *See* **Exhibit B; Exhibit C** at ¶ 7. Julia indicated that a nurse was reviewing the claims and needed additional information; that as soon as the nurse finished reviewing the matter, Julia would contact Ms. Boyd. *See id.*

19. Ms. Boyd called Julia on October 20, 2003, requesting an update; Julia advised Ms. Boyd that GMS was still reviewing the matter and would call Ms. Boyd after GMS's attorneys made a decision. *See* **Exhibit B; Exhibit C** at ¶ 8.

20. Julia called back on October 23, 2003 and indicated to Ms. Boyd that GMS (via Assurity Life) had accepted responsibility for the claims and would pay the claims within the subsequent two weeks. *See* **Exhibit B; Exhibit C** at ¶ 9.

21. In reliance on GMS's promise to pay, plaintiff subsequently refunded Citizens Insurance on December 10, 2003. *See* **Exhibit A; Exhibit C** at ¶ 10.

4

22. By November 20, 2003, plaintiff had not yet received any payments from GMS; Ms. Boyd left a message with Becky Lillie, district manager at GMS, inquiring as to whether GMS planned to forward payment. *See* **Exhibit B; Exhibit C** at ¶ 11.

23. GMS subsequently rejected the claims on December 18, 2003. *See* **Exhibit B; Exhibit C** at ¶ 12.

## COUNT I - FRAUD

24. Plaintiff hereby incorporates and re-alleges the allegations contained within paragraphs 1 through 23, as though fully set forth herein.

25. On October 23, 2003, at or about 4:43 p.m., Assurity Life, through its agent/third-party administrator, GMS, affirmatively represented to Ms. Boyd and ZCH that it was responsible for the claims and that payment would be forthcoming.

26. This affirmative representation was false when made and defendants knew it was false when made, or made the representation recklessly and without knowledge of its truth.

27. Defendants made the affirmative representation intending to induce plaintiff's reliance thereon.

28. In reliance on defendants' affirmative representation, plaintiff's refunded to Citizens Insurance all payments made and continued to administer IGIV treatments to Morales.

29. As a proximate result of defendants' affirmative misrepresentation, plaintiff suffered damages.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter a judgment in its favor against these defendants in an amount determined by the trier of fact as reasonable, along with any and all other relief this Honorable Court deems equitable and just.

## COUNT II – NEGLIGENT MISREPRESENTATION

30. Plaintiff hereby incorporates and re-alleges the allegations contained within paragraphs 1 through 29, as though fully set forth herein.

31. From April 19, 2002 through December 18, 2003, defendants undertook to determine whether they owed a duty of coverage for plaintiff's claims.

32. Defendants owed to plaintiff a duty to provide it with a correct determination as to responsibility for the claims.

33. Defendants breached that duty of care on December 18, 2003, when an agent of GMS, itself an agent of Assurity, affirmatively and negligently misrepresented to plaintiff that it was responsible for the claims and would pay those claims.

34. Plaintiff justifiably relied upon defendants' negligent misrepresentation by refunding payments made by Citizens Insurance and continuing to administer IGIV treatments to Morales.

35. As a proximate result of defendants' negligent misrepresentation, plaintiff has suffered damages.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter a judgment in its favor against these defendants in an amount determined by the trier of fact as reasonable, along with any and all other relief this Court deems equitable and just.

## COUNT III – PROMISSORY ESTOPPEL

36. Plaintiff hereby incorporates and re-alleges the allegations contained within paragraphs 1 through 35, as though fully set forth herein.

37. On December 18, 2003, an agent of GMS, itself an agent of Assurity Life, accepted responsibility for plaintiff's claim and promised to pay those claims.

6

38. Defendants should have reasonably expected that such a statement would induce plaintiff's reliance.

39. Plaintiff in fact did rely on defendants' promise, refunded all payments made by Citizens Insurance, and continued administering IGIV treatments to Morales.

40. Unless this Court enforces defendants' promise to pay these claims, injustice will result and defendants will unjustly benefit; plaintiff has rendered $337,169.47, exclusive of interest, in services for which it has not been paid.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter a judgment in its favor against these defendants in an amount determined by the trier of fact as reasonable, along with any and all other relief this Court deems equitable and just.

## COUNT IV – BREACH OF ORAL CONTRACT

41. Plaintiff hereby incorporates and re-alleges the allegations contained within paragraphs 1 through 40, as though fully set forth herein.

42. In consideration for plaintiff's rendering services to defendants' insured, and plaintiff's oral promise to continue rendering such services, defendants orally agreed to pay plaintiff for those services.

43. On December 18, 2003, however, defendants materially breached the oral contract with plaintiff.

44. As a result of defendants' material breach of oral contract, plaintiff has suffered damages.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter a judgment in its favor against these defendants in an amount determined by the trier of fact as reasonable, along with any and all other relief this Court deems equitable and just.

7

## COUNT V – BREACH OF CONTRACT – THIRD-PARTY BENEFICIARY

45. Plaintiff hereby incorporates and re-alleges the allegations contained within paragraphs 1 through 44, as though fully set forth herein.

46. Pursuant to the contract of insurance between Morales and defendants, plaintiff was an intended, third-party beneficiary; defendants contracted and promised to pay on behalf of Morales all claims covered under the insurance policy.

47. Defendants materially breached said contract by refusing to remit payment to plaintiff.

48. As a result of defendants' material breach, plaintiff has suffered damages.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter a judgment in its favor against these defendants in an amount determined by the trier of fact as reasonable, along with any and all other relief this Court deems equitable and just.


DATED: September 14, 2006

William W. Jack, Jr. (P23403)
R. Jay Hardin (P35458)
Joseph E. Belsito (P69014)
SMITH HAUGHEY RICE & ROEGGE
*Attorneys for Plaintiff*
250 Monroe Avenue, N.W.
200 Calder Plaza Building
Grand Rapids, MI 49503-2251
(616) 774-8000

## JURY DEMAND

Plaintiff, Zeeland Community Hospital, hereby demands trial by jury for Counts I through V of its Complaint.

DATED: September 14, 2006

William W. Jack, Jr. (P23403)
R. Jay Hardin (P35458)
Joseph E. Belsito (P69014)
SMITH HAUGHEY RICE & ROEGGE
*Attorneys for Plaintiff*
250 Monroe Avenue, N.W.
200 Calder Plaza Building
Grand Rapids, MI 49503-2251
(616) 774-8000